**Opinion filed January 24, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00279-CR
_____

## STEVEN AUDIS EMMONS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 22761-B**

## M E M O R A N D U M   O P I N I O N

Pro se Appellant, Steven Audis Emmons, appeals his conviction and the subsequent revocation of his community supervision for the offense of possession of methamphetamine in an amount of one gram or more but less than four grams, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (c) (West Supp. 2024). On appeal, Appellant raises several issues that can be loosely

categorized as complaints about (1) the voluntariness of his pleas, (2) the ineffective assistance of counsel that he received at all stages, (3) the evidentiary sufficiency of his underlying conviction, (4) the revocation of his community supervision, and (5) allegations of prosecutorial misconduct, government corruption, and other illegal activity. Because we conclude that Appellant's issues are without merit, inadequately briefed, or not properly before this court, we modify and affirm the judgment of the trial court.

## I. *Factual Background and Procedural History*

Appellant pled guilty on March 31, 2022 to third-degree-felony methamphetamine possession. *See id.* § 481.115(c). Prior to accepting Appellant's guilty plea and placing him on community supervision, the trial court admonished Appellant to ensure that his guilty plea was voluntary, and advised Appellant that he would have no right of appeal. Based on the parties' negotiated plea agreement, the trial court found Appellant guilty of the charged offense and assessed his punishment at imprisonment for ten years in the Correctional Institutions Division of the Texas Department of Criminal Justice; however, the trial court suspended Appellant's sentence and placed him on community supervision for a period of ten years. Appellant did not appeal or challenge his original guilty plea.

In May 2023, the State filed a motion to revoke Appellant's community supervision, then amended it in September 2023. Among the allegations raised in the amended motion were that Appellant used marihuana and alcohol and failed to report for nine out of the sixteen months he was on community supervision. The trial court held a hearing on the State's amended motion, during which Appellant pled "true" to all violations alleged. The trial court ordered the preparation of a presentence investigation report (PSI) and held a disposition hearing a month thereafter.

Appellant was the only witness at the disposition hearing. He explained that he stopped reporting because he was struggling financially, knew that he was unable to pay his fees, and "just got overwhelmed." Appellant acknowledged that he "didn't respond well," and did "[z]ero" while on probation, but he nonetheless requested to be continued on community supervision and sent to inpatient treatment. He admitted to using marihuana in June 2022—less than three months after being placed on community supervision—because his mother had just died. He testified that, during his period of non-reporting, he "[p]eriodically" used drugs and alcohol.

The State recommended revocation based on Appellant's noncompliance and extensive criminal history. According to the PSI and Appellant's testimony, he has served "[a]t least five" prison sentences for manslaughter and "[s]ome robberies." In justifying his "[h]orrible" performance on community supervision, Appellant purportedly "didn't realize that there were treatment programs that were available for probation[,]" stating that he "hadn't been on probation in 30 years." Although "[c]ertain circumstances just pushed [him] to violate" his probation conditions, he requested another chance to achieve sobriety.

Upon the conclusion of the hearing, the trial court revoked Appellant's community supervision and reformed his original sentence to nine years in the Correctional Institutions Division of the Texas Department of Criminal Justice. The trial court also re-pronounced the originally assessed $1,000 fine and court costs.

Appellant was initially represented by court-appointed counsel on appeal, who filed a motion to withdraw supported by an *Anders* brief. *See Anders v. California*, 386 U.S. 738 (1967); *Kelly v. State*, 436 S.W.3d 313 (Tex. Crim. App. 2014); *In re Schulman*, 252 S.W.3d 403 (Tex. Crim. App. 2008); *Stafford v. State*, 813 S.W.2d 503 (Tex. Crim. App. 1991). Appellant filed a pro se response as well as other motions and documents expressing dissatisfaction with his attorney's

3

representation and indicating a desire to represent himself on appeal. Therefore, we abated this appeal to allow the trial court to hold an evidentiary hearing on the issue of self-representation. *See Faretta v. California*, 422 U.S. 806, 835 (1975); *Ex parte Davis*, 818 S.W.2d 64, 66–67 (Tex. Crim. App. 1991); *Webb v. State*, 533 S.W.2d 780, 783–86 (Tex. Crim. App. 1976). At this hearing, Appellant stated that he wished to invoke his right to self-representation. After admonishing Appellant of the dangers and disadvantages of self-representation and finding that he competently, knowingly, intelligently, and voluntarily waived his right to counsel, the trial court permitted court-appointed appellate counsel to withdraw and granted Appellant's request to proceed pro se on appeal.

## II. *Discussion*

Proceeding pro se, Appellant filed two documents that we will collectively consider as his briefs, in addition to his *Anders* response that was filed while he was represented by appellate counsel. *See, e.g.*, *Talavera v. State*, No. 12-20-00015-CR, 2021 WL 2836359, at *1–2 (Tex. App.—Tyler July 7, 2021, no pet.) (mem. op., not designated for publication) (considering issues raised in the appellant's pro se response to his previous counsel's *Anders* brief after counsel withdrew upon the appellant's invocation of his right of self-representation); *Owens v. State*, No. 05-98-02058-CR, 2000 WL 714566, at *1 (Tex. App.—Dallas June 5, 2000, no pet.) (mem. op., not designated for publication) (after the appellant invoked his right to proceed pro se, the court permitted appellate counsel to withdraw, struck the *Anders* brief, and considered the merits of the appellant's pro se brief).

### A. *Inadequate Briefing*

Before addressing the merits of Appellant's complaints, we note that none of his filings comply with the briefing requirements of Rule 38.1 of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 38.1. There are no citations to the

appellate record, and aside from vague references to the United States Constitution and inapplicable provisions of the Texas Code of Criminal Procedure, Appellant cites no authority in support of his contentions.

While we liberally construe pro se pleadings and briefs, pro se litigants are held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure. *Black v. State*, No. 11-22-00334-CR, 2024 WL 3056093, at *2 (Tex. App.—Eastland June 20, 2024, no pet.) (mem. op., not designated for publication) (citing *Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988)); *see also Borne v. State*, 593 S.W.3d 404, 409 (Tex. App.—Beaumont 2020, no pet.) ("Although we construe pro se arguments 'with patience and liberality[,]' . . . a pro se appellant[] is not entitled to any special treatment and is held to the same standards as licensed attorneys.") (citing *Grubbs v. State*, 440 S.W.3d 130, 133 n.1 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd)). And "an appellate court has no 'obligation to construct and compose [an] appellant's issues, facts, and arguments with appropriate citations to authorities and to the record.'" *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) (quoting *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008)). As such, to the extent that Appellant has attempted to raise issues other than those addressed in this opinion, including his unsubstantiated claims of corruption and alteration of the record and exhibits,[1] those issues have been inadequately briefed and we overrule them. *See* TEX. R. APP. P. 38.1(i).

---

[1]Appellant accuses the Taylor County District Attorney's Office, the Abilene Police Department, the Taylor County District Clerk's Office, and the trial judge of corruption, prosecutorial misconduct, ethical violations, and other illegal activity. He likewise claims that he was convicted based on a "forged, illegal indictment," after a prosecutor (Joel Wilks) "erased" the arresting officer's bodycam video footage. Nothing in the record supports these allegations, they are inadequately briefed and are therefore overruled.

B. *Guilty Plea*

We construe several of Appellant's uncorroborated claims as challenges to the evidentiary sufficiency of his underlying conviction, and the voluntariness of his plea of guilty as being made under duress and based on ineffective assistance of counsel. For the reasons set forth below, we have no jurisdiction to address Appellant's challenges to his original guilty plea. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.755(e) (West 2018); *Wright v. State*, 506 S.W.3d 478, 481 (Tex. Crim. App. 2016).

Absent a void judgment, "an attack on the original conviction in an appeal from revocation proceedings is a collateral attack and is not allowed." *Wright*, 506 S.W.3d at 481; *see also* CRIM. PROC. art. 42A.755(e) ("The right of the defendant to appeal for a review of the conviction and punishment . . . shall be accorded the defendant *at the time* the defendant is placed on community supervision." (emphasis added)). In other words, absent a void judgment, issues relating to an original plea proceeding generally may not be raised in a subsequent appeal from the revocation of community supervision. *Jordan v. State*, 54 S.W.3d 783, 785–86 (Tex. Crim. App. 2001); *Manuel v. State*, 994 S.W.2d 658, 661 (Tex. Crim. App. 1999). In *Nix*, the Court of Criminal Appeals recognized four scenarios in which a judgment of conviction is void: (1) the document purporting to be a charging instrument does not satisfy the constitutional requisites of a charging instrument; (2) the trial court lacks subject-matter jurisdiction over the charged offense; (3) the record shows that there is no evidence to support the conviction; and (4) an indigent defendant is required to face criminal trial proceedings without appointed counsel, when such has not been waived in violation of the right to counsel for indigent defendants. *Wright*, 506 S.W.3d at 482 n.26 (citing *Nix v. State*, 65 S.W.3d 664, 668 & nn.12–15 (Tex. Crim. App. 2001)). Appellant does not argue that the original judgment placing him on

community supervision was void. Accordingly, Appellant failed to timely present his claims that his guilty plea was involuntary and that he received ineffective assistance of counsel prior to and during the original plea hearing.

Moreover, as we have noted, Appellant did not appeal the judgment of conviction following his original guilty plea, which was signed by the trial court on April 13, 2022. Nevertheless, even had Appellant timely appealed his conviction after his guilty plea was accepted by the trial court, Rule 25.2(a)(2) of the Texas Rules of Appellate Procedure would have foreclosed his right of appeal. *See* TEX. R. APP. P. 25.2(a)(2); *Griffin v. State*, 145 S.W.3d 645, 648 (Tex. Crim. App. 2004) (Rule 25.2(a)(2) "does not permit the voluntariness of the plea to be raised on appeal.") (quoting *Cooper v. State*, 45 S.W.3d 77, 83 (Tex. Crim. App. 2001)). We are thus without jurisdiction to address Appellant's claims concerning the voluntariness of his guilty plea, the alleged ineffectiveness of his counsel during the plea proceedings, and his remaining sub-issues related to his original guilty plea. *See* TEX. R. APP. P. 25.2(a)(2); *Chavez v. State*, 183 S.W.3d 675, 680 (Tex. Crim. App. 2006); *see also Lyle v. State*, No. 02-17-00227-CR, 2019 WL 3024480, at *1 & n.4 (Tex. App.—Fort Worth July 11, 2019, pet. ref'd) (mem. op., not designated for publication).

## C. *Trial Court's Revocation Decision*

We further discern from Appellant's filings a complaint that the trial court abused its discretion by revoking his community supervision, and that his due process rights were violated, in part because of judicial bias. Importantly, Appellant does not challenge the veracity of the allegations raised in the State's amended motion to revoke. Indeed, after he pled "true" to all allegations, he candidly discussed his protracted involvement with the criminal justice system. Appellant instead fervently protests the revocation decision and his term of imprisonment

assessed by the trial court as unjust and asserts that he was denied due process as a result of judicial bias. Specifically, Appellant alleges that the trial judge "has habitually shown a clear judicial [bias] . . . undermining the fairness of all proceedings." He claims that the trial court "selectively chose w[h]at to ignore" and "what to acknowledge, essentially silencing [Appellant's] defense (sabotaging) [, and] influencing illegal plea agreements with threats." Appellant further alleges that the trial court recessed proceedings so that Appellant's trial attorney, "Anthony Green[,][2] could influence [his]" responses. These issues, for which we find no basis in the record, have not been preserved for our review.

As a prerequisite to presenting a complaint on appeal, it must first be made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1(a)(1). A sentencing issue is preserved by objecting when the sentence is pronounced, or by filing a motion for new trial if there was no opportunity to object during the punishment hearing. *Burt v. State*, 396 S.W.3d 574, 577 & n.4 (Tex. Crim. App. 2013). Generally, a defendant forfeits constitutional errors by failing to object. *Golliday v. State*, 560 S.W.3d 664, 670–71 (Tex. Crim. App. 2018). Here, Appellant did not articulate his concerns to the trial court, of which he now complains on appeal, despite having ample opportunity to do so. But even had he preserved error, we conclude that the trial court afforded Appellant the process that he was due, and thus did not abuse its discretion by revoking Appellant's community supervision.

Once Appellant pled "true" to the allegations in the State's amended motion, the trial court had broad discretion in choosing whether to continue, modify, or revoke Appellant's community supervision. CRIM. PROC. arts. 42A.751(d), 42A.752(a); *Flournoy v. State*, 589 S.W.2d 705, 708 (Tex. Crim. App. [Panel Op.]

---

[2]Because Appellant argues that he received ineffective assistance from three separate attorneys, we refer to Green by name to avoid confusion.

8

1979) ("[W]hen the finding of a violation . . . is supported by a preponderance of the evidence and procedural problems are not raised, the discretion of the trial court to choose the alternative of revocation is at least substantially absolute."); *see also Tapia v. State*, 462 S.W.3d 29, 46 (Tex. Crim. App. 2015) ("A trial judge is given wide latitude to determine the appropriate sentence in a given case," and we cannot substitute our judgment for that of the trial court absent a clear abuse of discretion.). "The central issue to be determined in reviewing a trial court's exercise of discretion in a community supervision revocation case is whether the defendant was afforded due process of law." *Tapia*, 462 S.W.3d at 41. To meet the procedural requirements of due process,

> the final revocation of probation must be preceded by a hearing, where the probationer is entitled to written notice of the claimed violations of his probation, disclosure of the evidence against him, an opportunity to be heard in person and to present witnesses and documentary evidence, a neutral hearing body, and a written statement by the fact finder as to the evidence relied on and the reasons for revoking probation.

*Ex parte Carmona*, 185 S.W.3d 492, 495 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). For example, a trial court violates a defendant's due-process rights if it arbitrarily refuses to consider the entire range of punishment. *Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014). We presume a trial court was neutral and detached absent a clear showing of bias. *Tapia*, 462 S.W.3d at 44.

Nothing in the record suggests that the trial court expressed bias or refused to consider a lower sentence. At two separate hearings, the trial court ensured that Appellant's pleas of "true" were made freely and voluntarily, after repeatedly informing him of his right to contest the allegations and present mitigating evidence. The trial court reviewed the PSI, read Appellant's letters, and listened to Appellant's proffered justification for violating certain conditions of his community supervision.

9

Although Appellant petitioned the trial court for inpatient substance abuse treatment, the trial court explained its revocation decision:

> [TRIAL COURT]: I have considered all of the evidence. I also considered the PSI . . . [Appellant], . . . reinstatement of probation is not appropriate. Your criminal history is long. You've been to prison many times. Frankly, . . . in this case, you were what we call double-enhanceable. They could have enhanced you, based on your criminal history, to a 25 to life sentence on a third-degree felony, but they didn't do that.
>
> I want you to know, [Appellant], that I believe you when you say that . . . the desire of your heart is to be a man of honor. I believe that that's within you, and I believe you're sincere about that. I don't believe that you have achieved that, and I don't believe that you've performed well on probation.

We thoroughly reviewed the record and have found no indication whatsoever of judicial bias. *See, e.g.*, *Stafford v. State*, 63 S.W.3d 502, 510 (Tex. App.—Texarkana 2001, pet. ref'd) (finding no support in the record for pro se appellant's allegations of the trial judge's corruption and colluding with the prosecution to cover up the suppression of evidence); *see also Dingler v. State*, No. 05-03-01552-CR, 2005 WL 1039969, at *7 (Tex. App.—Dallas May 5, 2005, no pet.) (not designated for publication) (same). To the contrary, it is clear that the trial court considered all the evidence presented, the full range of punishment, and sentencing alternatives. But Appellant began using marihuana and alcohol within three months of being placed on community supervision, and soon stopped reporting in the months thereafter. The trial court's revocation decision is supported by the evidence and Appellant's pleas rather than any expressed bias.

We further observe no abuse of discretion in the trial court's assessment of imprisonment. Generally, "a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative

judgment, is unassailable on appeal." *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006). A nine-year term of imprisonment, which is less than the sentence to which Appellant agreed under the terms of the original plea bargain, is within the statutorily authorized punishment range for the third-degree felony offense of possession of methamphetamine. *See* HEALTH & SAFETY § 481.115(c); TEX. PENAL CODE ANN. § 12.34(a) (West 2019). Accordingly, we conclude that the trial court neither abused its discretion nor violated Appellant's right to due process as he suggests. We overrule Appellant's issues on this point.

D. *Ineffective Assistance of Counsel*

Appellant's argument that he received ineffective assistance of counsel at the revocation and sentencing hearings is based on the following actions by Green[3]: (1) failing to "request or subpoena" Appellant's probation officer or "office visit files" and three other witnesses; (2) persuading Appellant to plead "true" to the allegations in the State's amended motion to revoke; (3) permitting Appellant to testify at the sentencing hearing; and (4) failing to object "to the leveling of fines towards inmate account despite indigent status."

To prevail on a claim of ineffective assistance of counsel, an appellant must establish that: (1) his trial counsel rendered deficient performance in that it fell below an objective standard of reasonableness; and (2) he was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ex parte Lane*, 670 S.W.3d 662, 671 (Tex. Crim. App. 2023). An attorney's performance is deficient if it fell below an objective standard of reasonableness

---

[3]We reiterate that Appellant's other allegations are inadequately briefed and wholly unsupported by the record. In this regard, he claims that Green was ineffective based on: (1) allowing "a woman who works at the jail" to "badger[] [Appellant]"; (2) failing to object to the amended motion to revoke "after Joel [Wilks] was fired due to criminal actions [and] Bryan Hall doctor[ed] violation paperwork by duplicating violations with different wording"; and (3) permitting a bailiff "to persuade [Appellant] . . . to sign appeal paperwork before any ruling or sentencing had occurred."

under the prevailing professional norms, considering the facts of the case viewed from counsel's perspective at the time of the representation. *Lane*, 670 S.W.3d at 671.

"Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Hart v. State*, 667 S.W.3d 774, 782 (Tex. Crim. App. 2023) (quoting *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004)). "Trial counsel should generally be given the opportunity to explain his actions before being found ineffective." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021). "In the face of an undeveloped record, counsel should be found ineffective only if his conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

### 1. *Voluntariness of Appellant's Pleas of True*

Appellant complains that Green was ineffective for "persuad[ing]" him to plead true. An appellant claiming to have involuntarily entered his plea due to his trial counsel's ineffective assistance must prove that, but for his counsel's deficient performance, there is a reasonable probability that he would not have entered the plea. *See Lee v. U.S.*, 582 U.S. 357, 364–65 (2017); *Miller v. State*, 548 S.W.3d 497, 499–500 (Tex. Crim. App. 2018); *see also Sykes v. State*, 586 S.W.3d 522, 530 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd). In assessing a challenge to trial counsel's advice, "voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases[,] and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he

would not have pleaded [true]."[4]  *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Appellant fails to identify in what manner Green's purported advice to plead "true" rendered his pleas involuntary, and we may not infer ineffective assistance from a silent record.  *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012).  When a defendant enters a plea and attests that he "understands the nature of [his] plea and that it is being made knowingly and voluntarily, [he] has the burden on appeal to show that [his] plea was involuntary."  *Briggs v. State*, 560 S.W.3d 176, 187 (Tex. Crim. App. 2018) (citing *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998)).  Because the trial court properly admonished Appellant prior to accepting his pleas of "true," the burden is on Appellant to rebut this prima facie showing that his pleas were knowing and voluntary.  *See Mallett v. State*, 65 S.W.3d 59, 64 (Tex. Crim. App. 2001).  Specifically, the trial court explained:

> [TRIAL COURT]:  [Y]ou can either plead true or not true.  If you decide to plead not true, then I will not find the allegations true unless the State provides sufficient evidence to prove them.
>
> On the other hand, if you choose to plead true to these allegations, for instance, as part of a plea bargain or as an open plea, then I will rely on your plea of true.  And based solely on that plea of true, I can revoke your community supervision and sentence you to prison.
>
> Do you understand that?
>
> [APPELLANT]: Yes, sir.
>
> . . . .

---

[4]To the extent that Appellant challenges the voluntariness of his pleas, we conclude that he did not preserve this complaint for our review.  To do so, Appellant must have addressed his complaints to the trial court at the time of the revocation hearing or through a motion for new trial.  *See* TEX. R. APP. P. 33.1; *Mendez v. State*, 138 S.W.3d 334, 338–39 (Tex. Crim. App. 2004) (A complaint about the voluntariness of a plea is a "non-structural error" that must be preserved in accordance with Rule 33.1.).

[TRIAL COURT]: . . . No one is going to make you plead true. Okay?

[APPELLANT]: I know.

[TRIAL COURT]: I'm not going to make you plead true.

[APPELLANT]: I know.

[TRIAL COURT]: Your lawyer is not going to make you plead true.

[APPELLANT]: Yes, sir.

[TRIAL COURT]: The prosecutor is not going to make you plead true.

[APPELLANT]: Yes, sir.

[TRIAL COURT]: You can if you want, . . . but you don't have to.

. . . .

[APPELLANT]: Well . . . I don't want to challenge any of it . . . I'd like, if you will allow me, to plead true. If you will allow me, Your Honor, there were some circumstances that just overwhelmed me.

The trial court gave Appellant "some time with [his] lawyer . . . to discuss their plan for the case." Appellant then pled "true" to all the allegations, and the trial court reiterated:

[TRIAL COURT]: Do you understand that you don't have to plead true . . . and no one can make you plead true?

[APPELLANT]: Yes, sir.

[TRIAL COURT]: Are you pleading freely and voluntarily?

[APPELLANT]: Yes, sir.

[TRIAL COURT]: Has anyone threatened you or coerced you to get you to plead?

[APPELLANT]: No, sir.

14

[TRIAL COURT]: Has anyone promised you anything to get you to plead?

[APPELLANT]: No, sir.

[TRIAL COURT]: Are you pleading true because the allegations are, in fact, true?

[APPELLANT]: Yes, sir.

The record shows that Appellant was thoroughly admonished as to the consequences of his pleas, and unequivocally persisted in his desire to plead true. That the trial court assessed a punishment undesirable to Appellant has no bearing on the efficacy of his counsel at the time Appellant voluntarily decided to plead true and request leniency—our analysis is "from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight." *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012); *see also Dupre v. State*, No. 05-22-00726-CR, 2023 WL 3735228, at *3 (Tex. App.—Dallas May 31, 2023, no pet.) (mem. op., not designated for publication) (appellant's belief that "she would be sentenced to six- or nine-months' imprisonment rather than 12 months" did not render her plea involuntary). Appellant therefore failed to demonstrate how Green's performance was deficient, and that he would not have pleaded true but for Green's advice.

### 2. *Failure to Subpoena Witnesses*

Appellant identifies four potential witnesses that he claims Green should have subpoenaed: probation officer Troy Evans, two of his former managers from his brief employment at a restaurant, and his deceased mother's former caregiver, "Tracey."

A claim of ineffective assistance based on trial counsel's failure to call witnesses cannot succeed absent a showing that the witnesses were available to testify, and that their testimony would have benefited the defendant. *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007). "'It is not enough to show

that trial counsel's errors had some conceivable effect on the outcome' of the proceeding." *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012) (quoting *Ex parte Rogers*, 369 S.W.3d 858, 863 (Tex. Crim. App. 2012)).

Appellant has not demonstrated that any of the potential witnesses referenced above were available to testify. Aside from Troy Evans, he identifies the other three only by their first names. He further fails to explain how the testimony of these witnesses would have benefitted him. It is instead a higher likelihood that Evans's testimony would have benefitted the State's position, given that Evans presumably informed the State that Appellant failed to report and admitted to marihuana and alcohol use. In any event, the record is silent regarding Green's decision not to subpoena Evans or records from Appellant's probation office visits. Therefore, Appellant has failed to rebut the presumption that Green's decision was sound trial strategy. *See Strickland*, 466 U.S. at 689.

### 3. *Permitting Appellant to Testify*

Appellant next complains that Green should not have "put [him] . . . on the stand" at sentencing. A defendant's right to testify at his own trial is a fundamental constitutional right and is personal to the defendant. *Johnson v. State*, 169 S.W.3d 223, 232 (Tex. Crim. App. 2005) (citing *Rock v. Arkansas*, 483 U.S. 44, 52–53 (1987)); *Lee v. State*, 639 S.W.3d 312, 317 (Tex. App.—Eastland 2021, no pet.). The record before us does not establish that Appellant testified unwillingly or wished to remain silent and was prevented from doing so. Appellant also does not provide the nature of any advice by Green that prompted or encouraged him to testify. The record is clear, however, that Appellant was eager to share his reasons for his noncompliance. For instance, Appellant attempted to explain the "circumstances that just overwhelmed [him]" before pleading "true." The trial court interrupted and informed him that he would have the opportunity to "explain at the punishment

hearing any mitigating circumstances." Appellant also wrote at least two letters to the trial court. Therefore, Green's decision to permit Appellant to testify at the sentencing hearing, while fraught with risks, was a plausible means to achieve Appellant's desired result. Appellant's assertions, in the absence of corroboration, are insufficient to show that Green failed to protect Appellant's right to testify or inform him of his ability to waive that right. *See Johnson*, 169 S.W.3d at 235.

### 4. *Failure to Object to Fine*

Finally, Appellant contends that Green failed to object to the trial court's re-pronouncement of a $1,000 fine, which was originally assessed when Appellant was placed on community supervision. When alleging ineffective assistance of counsel based on the failure to object, an appellant must demonstrate that the trial court would have erred in overruling an objection had trial counsel made one. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Munoz v. State*, No. 11-13-00139-CR, 2015 WL 4053483, at *5 (Tex. App.—Eastland June 30, 2015, pet. ref'd) (mem. op., not designated for publication). The failure to object to proper questions and admissible evidence does not constitute ineffective assistance. *Ex parte Jimenez*, 364 S.W.3d at 887.

We are again left with a silent record as to Green's reasons for not objecting when the trial court re-pronounced the $1,000 fine. We thus may not find him to be deficient "unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Nava v. State*, 415 S.W.3d 289, 307–08 (Tex. Crim. App. 2013) (quoting *Menefield*, 363 S.W.3d at 593). Under the circumstances, Green's lack of objection to the trial court's re-pronouncement of the original fine was far from outrageous. The $1,000 fine was within the statutorily authorized amount, and the trial court did not abuse its discretion in revoking Appellant's community supervision and reducing the punishment originally

assessed, which included the $1,000 fine. *See* CRIM. PROC. art. 42A.755(a)(1); PENAL § 12.34(b) ("In addition to imprisonment, an individual adjudged guilty of a felony of the third degree may be punished by a fine not to exceed $10,000."). The trial court would not have erred in overruling any objection to the fine's assessment, and Green's representation cannot be found deficient for failing to engage in futile tactics. *See Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005) ("reasonably competent counsel need not perform a useless or futile act"). As such, there is nothing unreasonable in Green's failure to object to the trial court's re-pronouncement and imposition of the $1,000 fine.

We note, however, that the judgment of conviction does not recite the orally pronounced $1,000 fine and $450 court costs. When there is a variance between the trial court's oral pronouncement and its written memorialization of the sentence, the oral pronouncement controls. *See Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998). As such, we modify the trial court's judgment to include the $1,000 fine and $450 court costs that the trial court orally pronounced. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (The Texas Rules of Appellant Procedure empower courts of appeals to reform judgments.).

In conclusion, there is nothing in the record before us that compels a determination that Green's performance was deficient. Appellant pled "true" to the allegations raised in the State's amended motion, and the trial court acted within its discretion by revoking Appellant's community supervision and assessing a lesser punishment than originally imposed. Considering Appellant's undisputed noncompliance with the conditions of his community supervision, and the trial court's imposition of a lower sentence than was originally assessed, Appellant has

failed to demonstrate how his trial counsel's performance was deficient. Thus, we overrule Appellant's issues that relate to the effectiveness of his trial counsel.

## III. *This Court's Ruling*

Accordingly, we affirm the judgment of the trial court as modified.[5]


W. STACY TROTTER

JUSTICE


January 24, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[5]Appellant filed a "Motion to Grant Appeal Bond" in this court but subsequently filed a letter "declar[ing]" his motion "void," stating that the motion was addressed to the trial court instead of this court. We construe Appellant's letter as a request to withdraw his motion to grant an appeal bond, and we deny the motion based on his request.